## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CURTIS ALLEN BRIDGES**                                              **CIVIL ACTION**

**VERSUS**                                                                        **NO.  14-2113**

**KEITH COOLEY, WARDEN**                                        **SECTION "I"(2)**


## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.   FACTUAL BACKGROUND

The petitioner, Curtis Allen Bridges, is a convicted inmate currently incarcerated in the Allen Correctional Center in Kinder, Louisiana.[2]  On December 16, 2011, Bridges was charged by bill of information in St. Tammany Parish with one count of aggravated battery and one count of cruelty to a juvenile.[3]  The bill was re-filed on February 28, 2012, to include a third count of possession of cocaine.[4]  The Louisiana First Circuit Court of Appeal summarized the facts of the case as determined at trial as follows:[5]

> At the time of the offense, the defendant was living in Slidell with his girlfriend (who indicated that she lost her eyesight in 2009 and was considered legally blind) and her twelve-year-old son D.G., the victim (herein identified by initials only pursuant to LSA-R.S. 46:1844(W)).  During the early morning hours of Saturday, October 1, 2011, the defendant arrived at home and knocked on the window as the door was locked with a deadbolt.  The defendant's girlfriend opened the door and they began arguing over money. Specifically, the defendant wanted her to return a $400.00 money order that he purchased after cashing his disability check.  As the money order was originally purchased to use as a deposit on an apartment in New Orleans where they planned to move, unbeknownst to the defendant, his girlfriend asked a friend to hold the money order for them to ensure that it would be saved for the intended purpose.  The defendant became hysterical when his girlfriend refused to give him the money order.  While they were in their bedroom, the defendant began yelling and cursing and ultimately pushed her to the floor.
> The victim heard the commotion and entered the bedroom and observed his mother on the floor.  The defendant pushed him out of the room and closed

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 4, Bill of Information, 4/13/09.

[4]St. Rec. Vol. 1 of 4, Bill of Information, 2/28/12.

[5]As stated in the opinion, Louisiana law requires that the juvenile victim be referenced by his initials, D.G.  I will continue to do so in this opinion and refer to his mother by her initials, T.B.

the door. The victim reopened the door and entered the bedroom. At some point, the victim attempted to push the defendant away from his mother. According to the victim, after he pushed the defendant, the defendant got angry and chased him into the hallway. As the defendant and the victim struggled, the victim's mother instructed her sister, who was also present in the home, to call the police. As she complied, the defendant took the telephone. While they were in the hallway, the defendant repeatedly punched D.G., the victim, in the face. The defendant continued to confront the victim's mother over the money order and the victim went into the kitchen and grabbed a knife. The victim brandished the knife and told the defendant to back away from his mother. The defendant grabbed the victim's hand and the victim dropped or lost control of the knife. As a result of the defendant's attack, the victim sustained cuts to his ear and chest. The police ultimately arrived at the home and questioned the occupants.

State v. Bridges, No. 2012-KA-2120, 2013 WL 2484834, at *1 (La. App. 1st Cir. Jun. 7, 2013) (unpub.); State Record Volume 3 of 4, Louisiana First Circuit Court of Appeal Opinion, 2012-KA-2120, pages 2-3, June 7, 2013.

Bridges was tried before a jury on March 5 and 6, 2012, and found guilty as to count one on the lesser offense of simple battery and guilty as charged of cruelty to a juvenile and possession of cocaine.[6] At an October 10, 2010, hearing, the state trial court denied Bridges's motions for a new trial and post-verdict judgment of acquittal.[7]

---

[6]St. Rec. Vol. 1 of 4, Trial Minutes, 3/5/12; Trial Minutes, 3/6/12; Jury Verdict - Count 1, 3/6/12; Jury Verdict - Count 2, 3/6/12; Jury Verdict - Count 3, 3/6/12; Trial Transcript, 3/5/12; Trial Transcript, 3/6/12; St. Rec. Vol. 2 of 4, Trial Transcript (continued), 3/6/12.

[7]St. Rec. Vol. 1 of 4, Sentencing Minutes, 10/10/12; Motion for New Trial, 3/7/12; Motion for Post-Verdict Judgment of Acquittal, 3/7/12; St. Rec. Vol. 2 of 4, Multiple Bill Hearing Transcript, 10/10/12.

Bridges thereafter admitted to the court that he was a fourth felony offender as charged by the State in the previously filed multiple bill.[8]  After waiver of legal delays, the state trial court sentenced Bridges to six (6) months in the parish jail for simple battery and five years in prison at hard labor on count three, possession of cocaine.  As to count two, cruelty to a juvenile, the court sentenced Bridges as a multiple offender to twenty-five (25) years in prison at hard labor without benefit of probation or suspension of sentence.  The court ordered each sentence to run concurrently and denied Bridges's motion to reconsider the sentences.[9]

On direct appeal, Bridges's appointed counsel asserted three errors:[10] (1) The state trial court erred when it denied the motion for post-verdict judgment of acquittal. (2) The state trial court erred when it denied the motion for a new trial. (3) The evidence was insufficient to support the conviction for cruelty to a juvenile.  On June 7, 2013, the Louisiana First Circuit affirmed Bridges's convictions, multiple offender adjudication

---

[8]St. Rec. Vol. 2 of 4, Multiple Offender Transcript, p. 3-4, 10/10/12; St. Rec. Vol. 1 of 4, Multiple Bill, 5/15/12; Sentencing Minutes, 10/10/12.

[9]St. Rec. Vol. 2 of 4, Multiple Offender Transcript, p. 3-4, 10/10/12; St. Rec. Vol. 1 of 4, Sentencing Minutes, 10/10/12; Motion to Reconsider Sentence, 10/10/12.  Bridges entered a plea of guilty to a related charge of domestic abuse battery for which he received a concurrent sentence of six (6) months in the parish jail.  St. Rec. Vol. 2 of 4, Multiple Offender Transcript, pp. 10-11, 10/10/12.

[10]St. Rec. Vol. 4 of 4, Appeal Brief, 2012-KA-2120, 1/22/13.  The Court denied as untimely Bridges's motion to file a supplemental brief.  St. Rec. Vol. 4 of 4, 1st Cir. Order, 2012-KA-2120, 6/13/13; Motion for Leave to Supplement, 5/29/13.

and sentences, finding that the evidence was sufficient and there was no basis for the jury to have found that Bridges's acted in self-defense.[11]

The Louisiana Supreme Court denied Bridges's subsequent writ application without stated reasons on January 10, 2014.[12] His convictions became final ninety (90) days later, on April 10, 2014, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

Bridges later submitted an application for post-conviction relief to the state trial court asserting that the Louisiana First Circuit erred in affirming his conviction and the state trial court's denial of his motions for post-verdict judgment of acquittal and for a new trial and arguing again that the evidence was insufficient to support the verdict.[13] The state trial court denied relief on August 11, 2014, because the challenge to the ruling of the Louisiana First Circuit could only be addressed by the Louisiana Supreme Court

---

[11]Bridges, 2013 WL 2484834, at *1; St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2012-KA-2120, 6/7/13.

[12]State v. Bridges, 130 So.3d 321 (La. 2014); St. Rec. Vol. 4 of 4, La. S. Ct. Order, 2013-KO-1488, 1/10/14; La. S. Ct. Writ Application, 13-KO-1488, 6/24/13 (dated 6/17/13).

[13]St. Rec. Vol. 3 of 4, Uniform Application for Post-Conviction Relief, 8/4/14 (dated 7/30/14).

and was not a proper basis for post-conviction relief under La. Code Crim. P. art. 930.3. The record does not reflect that Bridges sought further review of that order.

## II.   FEDERAL HABEAS PETITION

On September 12, 2014, the clerk of court filed Bridges's petition for federal habeas corpus relief asserting that the evidence was insufficient to support his conviction for cruelty to a juvenile.[14]  The State filed an answer and memorandum in opposition to Bridges's petition conceding that his petition was timely filed and that his claim had been exhausted.[15]  The State argued, however, that Bridges failed to prove that the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court law.

## III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[16] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore

---

[14]Rec. Doc. No. 1.

[15]Rec. Doc. Nos. 8, 9.

[16]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to Bridges's petition, which, for reasons discussed below, is deemed filed in this court on September 11, 2014.[17]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether all claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).  The State concedes and I find that the petition was timely filed and that state court review of the claims has been exhausted.  The record does not reflect that Bridges's claim is in procedural default.

IV.    STANDARDS OF MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

---

[17]The United States Court of Appeals for the Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Bridges's petition was filed by the clerk of court on September 12, 2014, when it was received.  His signature on the petition is dated September 11, 2014.  This is the earliest date appearing in the record on which he could have presented the pleadings to prison officials for mailing to a federal court.

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from

> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry v. Johnson, 532 U.S.

782, 792-93 (2001);  Hill, 210 F.3d at 485.  The "critical point" in determining the

Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s

unreasonable-application clause if, and only if, it is so obvious that a clearly established

rule applies to a given set of facts that there could be no 'fairminded disagreement' on

the question." (citation omitted) White v. Woodall, __ U.S. __, 134 S. Ct. 1697, 1706-07

(2014) (citing Harrington v. Richter, 562 U.S. 86, __, 131 S. Ct. 770, 787 (2011), and

Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must

extend a rationale before it can apply to the facts at hand,' then by definition the rationale

was not 'clearly established at the time of the state-court decision.'" White, 134 S. Ct.

at 1706 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

"'A federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the state court decision applied [a Supreme

Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford

v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S.

685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only

question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003).  The burden is on the petitioner

to show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

V.      SUFFICIENCY OF THE EVIDENCE

Bridges alleges that the evidence was insufficient to support the guilty verdict of

cruelty to a juvenile because the victim, D.G., attacked him with a knife and had

previously thrown a rock at him.  Bridges's appointed counsel asserted these arguments

on direct appeal.

In its reasoned opinion rejecting this claim, the Louisiana First Circuit relied upon

the standards established in Jackson v. Virginia, 443 U.S. 307 (1979), and related state

law, to find that the force exercised by Bridges against the child victim was not

reasonable or necessary and therefore did not constitute a defense of justification,

reasonable act of discipline or self-defense.  This was the last reasoned state court

opinion on the issue.  See Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991) (when the last

state court judgment does not indicate whether it is based on procedural default or the

merits of a federal claim, the federal court will presume that the state court has relied

upon the same grounds as the last reasoned state court opinion).

Under Jackson, federal habeas court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. Jackson, 443 U.S. at 319; Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008); Williams v. Cain, 408 F. App'x 817, 821 (5th Cir. 2011). To determine whether the guilty verdict is adequately supported by the evidence, the court must review the substantive elements of the crime as defined by state law. Perez, 529 F.3d at 594 (citing Jackson, 443 U. S. at 324 n.16). The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. See McDaniel v. Brown, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under Jackson); Johnson v. Cain, 347 F. App'x 89, 91 (5th Cir. 2009) (Jackson standard relies "upon the record evidence adduced at the trial") (quoting Jackson, 443 U.S. at 324).

Review of sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of witnesses, because those determinations are the exclusive province of the jury. United States v. Young, 107 F. App'x 442, 443 (5th Cir. 2004) (citing United States v. Garcia, 995 F.2d 556, 561 (5th Cir. 1993); see Jackson, 443 U.S. at 319 (it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to

ultimate facts"). A reviewing federal habeas court is <u>not</u> authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder. <u>Weeks v. Scott</u>, 55 F.3d 1059, 1062 (5th Cir. 1995); <u>Alexander v. McCotter</u>, 775 F.2d 595, 598 (5th Cir. 1985). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict. <u>Ramirez v. Dretke</u>, 398 F.3d 691, 695 (5th Cir. 2005). In addition, "[t]he <u>Jackson</u> inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" <u>Santellan v. Cockrell</u>, 271 F.3d 190, 193 (5th Cir. 2001) (quoting <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact. <u>Perez</u>, 529 F.3d at 594; <u>Maes v. Thomas</u>, 46 F.3d 979, 988 (10th Cir. 1995). Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of the foregoing United States Supreme Court precedent.

Bridges challenges his conviction for cruelty to a juvenile in violation of La. Rev. Stat. §14:93(A)(1),[18] which is the intentional or criminally negligent mistreatment or neglect of a child under the age of 17 by a person over the age of 17, whereby unjustifiable pain or suffering is caused to the child. <u>See</u> <u>Richthofen v. Cain</u>, No. 05-5701, 2008 WL 630477, at *37 (E.D. La. Mar. 7, 2008) (Order adopting Report and

---

[18]This was the only subsection of the statute deemed applicable at his trial. St. Rec. Vol. 1 of 4, Trial Transcript, p. 5, 3/6/12.

Recommendation); State v. Joseph, 94 So.3d 922, 927 (La. App. 3d Cir. 2012). To have endured unjustifiable pain and suffering, the child need not require medical treatment. State v. Sedlock, 882 So.2d 1278, 1284 (La. App. 3d Cir. 2005).

As to this statute, Louisiana law equates mistreatment with abuse. State v. Comeaux, 319 So.2d 897, 899 (La. 1975). Thus, the term intentional requires a showing of general criminal intent to cause a child unjustifiable pain and suffering. State v. Chacon, 860 So.2d 151, 153 (La. App. 5th Cir. 2003); State v. Cortez, 687 So.2d 515, 519 (La. App. 3d Cir. 1996) (citing State v. Morrison, 582 So.2d 295 (La. App. 1st Cir. 1991)). To be criminally negligent in mistreatment or neglect of a child, a defendant must have acted with disregard for the interest of the child in a manner that would amount to a "gross deviation below the standard of care expected to be maintained by a reasonably careful person under like circumstances." State v. Porter, 761 So.2d 115, 123 (La. App. 3d Cir. 2000); see also, La. Rev. Stat. §14:12 (criminal negligence).

The evidence at Bridges's trial established, and Bridges does not contest, that he and T.B., the victim's mother, who is blind, were engaged in an argument over money when the relevant incidents occurred. The testimony at trial established that Bridges, who was yelling and cursing, pushed T.B. to the floor twice during the argument.[19] The two continued the argument as they moved from the bedroom to the living room and

---

[19]St. Rec. Vol. 2 of 4, Trial Transcript (continued), pp. 36-38 (T.B.), 3/6/12.

back to the bedroom.[20]  T.B.'s 12-year-old son, D.G., had been watching television in the living room during the argument.  When the two adults continued the argument in the bedroom, D.G. went to his mother's bedroom to see what was happening.[21]  He saw his mother on the floor before Bridges closed the bedroom door in front of him.

D.G. opened the door and pushed past Bridges trying to get to his mother.[22] Bridges shoved D.G. out of the room and then chased him down the hallway.[23]  Bridges punched D.G. repeatedly in the face and jaw, maybe four times, which caused D.G. great pain.[24]  When T.B. heard the scuffle, she told her sister, who was in the house, to call the police.[25]  Bridges grabbed the phone from the sister before turning again to follow D.G.

In the meantime, D.G. saw his mother putting on her shoes so they could try to leave the house, and he went to the kitchen to get a knife out of a drawer to ward off Bridges.[26]  By the time D.G. got to the kitchen, Bridges was in the hallway near the

---

[20]Id., p. 37 (T.B.), p. 72 (D.G.).

[21]Id., pp. 55-56 (D.G.).

[22]Id., pp. 35-36 (T.B.), p. 55 (D.G.)

[23]Id., pp. 35-36, 37 (T.B.), p. 55 (D.G.)

[24]Id., pp. 57-58 (D.G.).

[25]Id., p. 37 (T.B.).

[26]Id., p. 37 (T.B.), p. 58 (D.G.).

14

kitchen door.[27]  D.G. held the knife in his hand and told Bridges to back away.[28]  Bridges

grabbed D.G.'s hand and the knife fell to the floor.  Bridges quickly picked up the knife

and began punching D.G., which caused knife cuts to D.G.'s ear and chest.  T.B. could

hear D.G. screaming while he struggled with Bridges.[29]  Upon hearing the commotion,

T.B. pounded on the wall to get her neighbor to call the police.  When the police arrived,

they received information and statements that were consistent with the testimony given

by D.G. and T.B. at trial.[30]

The foregoing evidence fully established that Bridges, who was forty-four (44)

years old, used force to intentionally punch and injure twelve-year-old D.G. which

caused D.G. to suffer cuts, visible physical injuries, and pain, although D.G. declined

medical treatment.  This intentional infliction of unnecessary pain by Bridges occurred

on two separate occasions during the night's events, once in the hallway and again in the

kitchen.  As resolved by the state courts, this evidence was more than sufficient to

support the jury's finding of Bridges's guilt on the charge of cruelty to a juvenile.

---

[27]Id., p. 37 (T.B.), p. 59 (D.G.).

[28]Id., p. 59 (D.G.).

[29]Id., p. 38.

[30]See e.g., Id., pp. 87-89, 91, 95-96 (Deputy Steven Lang).

In addition, the evidence that Bridges returned to strike and injure D.G. provided proof that Bridges did not act in self-defense or with legal justification.[31]  As discussed by the Louisiana Fifth Circuit, a justifiable act will constitute a defense to prosecution for a crime based on that conduct. La. Rev. Stat. § 14:18. Under Louisiana law, justification exists when the conduct in question is "reasonable discipline of minors by their parents, tutors or teachers."  La. Rev. Stat. § 14:18(4); Comeaux, 319 So.2d at 899. The evidence, including T.B.'s testimony, established that Bridges was not D.G.'s father, legal tutor or teacher.  He was simply T.B.'s boyfriend.  This defense was not available in this case.

In addition, in a non-homicide situation, Louisiana law provides that a claim of self-defense applies when the force used was reasonable under the circumstances and was apparently necessary to prevent harm to the accused.  See La. Rev. Stat. § 14:19(A); State v. Taylor, 721 So.2d 929, 931 (La. App. 1st Cir. 1998); State v. Navarre, 498 So.2d 249, 252-53 (La. App. 1st Cir. 1986).  A claim of self-defense, however, is not available to "[a] person who is the aggressor or who brings on a difficulty . . . unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should

---

[31]The Louisiana courts have not resolved with certainty the exact burden to be met by defendants, or on rebuttal by the State, as to self-defense in a non-homicide case.  State v. Sparkman, 136 So.3d 98, 106 & n.5 (La. App. 5th Cir. 2014). The majority view appears to be that a defendant in a non-homicide case has the burden of proof by a preponderance of the evidence that his actions were in self-defense. Id., at 106, n.5; see also, State v. Freeman, 427 So.2d 1161 (1983); State v. Graham, No. 2013-KA-1893, 2014 WL 1778375, at *6 & n.1 (La. App. 1st Cir. May 2, 2014); State v. Wischer, 885 So.2d 602 (La. App. 4th Cir. 2004).

know that he desires to withdraw and discontinue the conflict." La. Rev. Stat. § 14:21; State v. Sparkman, 136 So.3d 98, 107 (La. App. 5th Cir. 2014). While Louisiana law does not impose an unqualified duty to retreat, "the possibility of escape from an altercation is a recognized factor in determining whether the defendant had a reasonable belief that deadly force was necessary to avoid the danger." Sparkman, 136 So.3d at 107.

In this case, Bridges did not offer any evidence or testimony to establish his claim of self-defense. In fact, no defense witnesses were called. Instead, Bridges's counsel attempted to elicit testimony on cross-examination to show that D.G. had on a prior occasion argued with Bridges and even thrown a rock at Bridges, hitting him in the stomach. The jury heard this evidence and also heard that even in that incident, Bridges fought with D.G., causing a scratch to D.G.'s chest. The jury clearly rejected the notion that this past event was sufficient to justify Bridges's actions.

Counsel also questioned T.B. and D.G. about the knife obtained by D.G. during the argument in the home. This evidence did not provide a sufficient showing for the jury to find that Bridges's was justified in beating D.G. Instead, the testimony proved that, in the first exchange, D.G. left his mother's room and Bridges chased him down the hall, caught him and punched him repeatedly in the face. Bridges clearly was the aggressor in that instance when he pursued the victim to impose the painful blows.

When D.G. later obtained the knife from the kitchen drawer, it was <u>after</u> he had already been struck by Bridges in the hallway and had seen Bridges push his mother to the ground at least once.  D.G.'s testimony, apparently found credible by the jury, was that he got the knife out of the drawer to protect himself and his mother from Bridges while they tried to leave the house.  D.G. denied lunging at Bridges or waving the knife. Instead, the evidence showed that when Bridges saw the knife in D.G.'s hand, Bridges easily and swiftly disarmed D.G. and took possession of the knife.  Rather than end the confrontation with the child, the older and larger Bridges repeatedly punched D.G., causing D.G. to suffer pain and injury by his punches and incidental contact with the knife.

Bridges identifies no evidence that might have convinced a rational jury that he acted in self-defense either in the hallway or in the kitchen.  The evidence instead more than reasonably demonstrated that Bridges was either the aggressor and/or at no time faced any real or apparent danger posed by D.G. to justify his actions that night.

The state courts' denial of relief on this issue was not contrary to or an unreasonable application Supreme Court law.  Bridges is not entitled to federal habeas relief.

**RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Bridges's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[32]

New Orleans, Louisiana, this _____2nd_____ day of February, 2015.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[32]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

19